**IN THE COURT OF APPEALS OF IOWA**

No. 21-0351
Filed June 16, 2021

**IN THE INTEREST OF J.D.,**
**Minor Child,**

**K.U., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


　　　A mother appeals the termination of her parental rights. **AFFIRMED.**


　　　Agnes G. Warutere of Warutere Law Firm, PLLC, Ankeny, for appellant

mother.

　　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

　　　Lisa A. Allison of Allison Law Firm, LLC, Des Moines, for appellee father.

　　　Paul White of Juvenile Public Defender, Des Moines, attorney and guardian

ad litem for minor child.


　　　Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to J.D. She challenges the grounds for termination and the court's "pattern of conduct" consideration for termination, argues termination is not in the best interests of the child, and asks the court to apply two of the permissive exceptions to termination. We find the grounds for termination were established by clear and convincing evidence, the mother's behavior was a valid concern, and termination was in the child's best interests. We decline to apply the exceptions to termination in this case.

J.D. was born in September 2017. The mother and father broke up shortly after J.D.'s birth, and the mother began dating. In early 2018, the mother's children[1] were exposed to marijuana in the home. As a result, in April, the mother pled guilty to child endangerment and was granted a deferred judgment.

On April 28, the mother left the children in her boyfriend's care while she went to work. Later that morning, the boyfriend called 911 after J.D. vomited, became lethargic, and stopped breathing. The child was hospitalized and almost died from significant non-accidental injuries consistent with being violently shaken. Hospital records indicate the child had older brain injuries as well as recent trauma upon admission. The child also suffered heart attacks before and while in the hospital.

---

[1] The mother has a second child approximately eighteen months older than J.D. In May 2018, J.D.'s older half-sibling was removed and placed with the maternal grandparents and is now in a guardianship under their care.

The child has severe permanent disabilities as a result of the abuse suffered while in the mother's custody. The child requires a high level of care with frequent medical appointments, regular physical and occupational therapy, nutrition controlled via a feeding tube, and multiple medications. The child has little ability to communicate and limited bodily control.

On May 18, the child was discharged from the hospital to ChildServe for additional medical care.[2] The parents consented to the child's removal, and legal custody was given to the maternal grandparents. On June 21, the child was adjudicated a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(b) (2018) (a parent or member of the household has or is "imminently likely to abuse or neglect the child"), (c)(2) (parent or member of household failed "to exercise a reasonable degree of care in supervising the child"), and (n) (parent's "mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care").

Following discharge from ChildServe on December 7, 2018, through October 18, 2019, the child was placed with the maternal grandparents. At that time, the goal was to reunite the child with the mother. In March 2019, the mother requested immediate reunification, but the court changed the permanency goal to reunification of the child with the father, citing the mother's lack of insight into the

---

[2] ChildServe provides short- and long-term "pediatric rehabilitation and care for children and young adults who have a wide variety of developmental delays, disabilities, acquired injuries, and other special healthcare needs." *Getting to Know ChildServe*, ChildServe, https://www.childserve.org/about/ (last visited May 25, 2021).

cause of the child's injuries and her role in the injuries. On October 18, the child was placed in the father's custody.

The child goes to ChildServe five days a week for daycare, and the father does caregiving at home. He receives help in scheduling appointments, food and diaper assistance, and medication management from a social worker. The mother has weekly ninety-minute visits with the child supervised by her parents.

For much of the CINA proceedings, the mother denied either she or her then-boyfriend were responsible for the injuries, instead seeking to blame a babysitter or accident.[3] The department of human services (DHS) identified this failure to take accountability and acknowledge the injuries caused as a primary concern. The mother often presented a "flat affect" when discussing the child's injuries and severity. At the termination hearing, the mother finally stated her former boyfriend was the one who hurt the child.

At permanency hearings[4] and permanency review hearings,[5] the mother presented evidence of alleged deficiencies in the father's care and requested the child be placed with her or her parents.[6] Each time, the court found the father's care adequate and declined to change the permanency goal. After the July 2020

---

[3] The police criminal investigation centered on the mother and her boyfriend, but ended without charges being filed. The juvenile court concluded "the State is unable to prove which individual, Mother or her paramour, inflicted the abuse."

[4] Permanency hearings were held on December 18, 2018, and March 13, 2019.

[5] Permanency review hearings were held on June 13, September 12 and 16, October 18, 2019, and February 19, March 6, April 9, and July 8, 2020.

[6] For example, in the September to October 2019 review hearing, the mother and grandmother alleged the father had not changed the child's food bag for several days. Neither brought the problem to the attention of the child's daycare or the father, instead photographing the bag to use as evidence of the father's care. The court found the photographic evidence disproved the mother's allegations.

hearing, the court ordered the parties to address how to close the CINA case. The parents did not reach a custodial agreement.

On September 23, 2020, the father filed a petition to terminate the mother's parental rights.[7] DHS filed a report agreeing with the termination request, specifically noting the mother's continual challenge of the adequacy of the father's care and the disruptions it caused in the child's life. The termination hearing spanned six days between October 27 and December 9, 2020. Much of the mother's argument at the termination hearing concentrated on the care the father was providing the child rather than the mother's ability to parent the child.

The mother asked the juvenile court to order the parents to petition the district court to obtain a custody order, acknowledging the court would likely give the father sole legal custody of the child. The child's court-appointed special advocate opined the only way to assure the child's safety would be to terminate the mother's parental rights. The State agreed with the father and argued in favor of termination of the mother's parental rights. The child's attorney and guardian ad litem joined in the State's recommendation.

On March 1, 2021, the juvenile court terminated the mother's parental rights under three grounds: Iowa Code section 232.116(1)(d), (h), and (i).

---

[7] Although normally filed by the State, "A child's guardian, guardian ad litem, or custodian, the department of human services, a juvenile court officer, or the county attorney may file a petition for termination of the parent-child relationship and parental rights with respect to a child." Iowa Code § 232.111 (2020). We have held a parent with custody of the child has standing as "custodian" for purposes of filing a petition for the termination of parental rights under chapter 232. *See In re S.R.*, No. 00-0884, 2001 WL 539670, at *2 (Iowa Ct. App. May 23, 2001).

The mother appeals. The father filed a response to the mother's appeal, arguing in favor of termination, in which the State joined.

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the findings of the court but are not bound by them. Iowa R. App. P. 6.904(3)(g).

*Pattern of conduct.*[8] The mother contends there was no negative change in her situation between the July 2020 permanency review order—which ordered the parties to hold a staffing addressing case closure—and the end of the termination hearing. She notes the court did not order the State to file the termination petition and the petition was not filed by the State or the guardian ad litem. She also takes issue with the court's reference to her "pattern of conduct" toward the father.

While the State did not file the petition, it argued in favor of termination at the hearing, as did the guardian ad litem and DHS. We find no specific negative change in this long-standing situation was required to justify the filing of a termination petition, and the mother cites no authority to support such a constraint. At the time the petition to terminate was filed, the child had been out of the mother's care for more than two years.

"While we recognize the law requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,' Iowa has built this patience into the statutory scheme of Iowa Code chapter 232." *In re C.B.*, 611

---

[8] The mother's petition describes the first issue as: "The district court erred in terminating Mother's parental rights primarily because the parents could not agree on the terms of a Bridge Order." She makes no argument regarding the bridge order, and therefore we will not discuss it.

N.W.2d 489, 494 (Iowa 2000) (citation omitted). The legislature incorporated a six-month limitation for a CINA aged three and below. *Id.* Once that statutory period has lapsed, we view termination proceedings "with a sense of urgency." *Id.* at 495.

The pattern of conduct that concerned the juvenile court was the mother's constant challenge of the father's care to DHS, to medical providers, and to the court at each permanency hearing. The mother did not accept the father's efforts to address the problems she reported, and the professional caregivers working with the child generally did not share her concerns. Even at the extended hearing regarding termination of her parental rights, the mother attempted to discredit the father's care rather than explain why her rights should not be terminated.

The mother's hostility toward the custodial father and interference in his care is a valid concern for the court. However, that concern alone could not have resulted in termination of the mother's parental rights. The petition had to be supported by clear and convincing evidence of at least one statutory ground for termination.

*Grounds for termination.* The mother challenges all three grounds for termination. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *A.B.*, 815 N.W.2d at 774. We focus on Iowa Code section 232.116(1)(h).

Under section 232.116(1)(h), the court may terminate parental rights if

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months,

> or for the last six consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother concedes the first three elements have been met: the child is three years old, has been adjudicated a CINA, and has been out of the mother's physical custody since April 2018 with no trial period at home. However, she asserts "there was no clear and convincing evidence that [the child] could not be returned to Mother at the time of the hearing."

At the termination hearing, the mother did not request the child be returned immediately to her care. This implicit concession establishes the child cannot be returned to the mother at present. She opined that "given the time" she could take care of the child but asked the child be placed with her parents in the interim.[9] The mother has only had weekly supervised visitation with the child at her parents' home, and the child has been out of her care for over three years. Although the mother has participated in services offered, until the time of the termination hearing she resisted accepting how the child was injured or taking responsibility for her role in the child's injuries..

Based on our de novo review, we find clear and convincing evidence the child could not be returned to the mother's care at the time of the hearing and grounds for termination of the mother's parental rights were established under Iowa Code section 232.116(1)(h).

---

[9] The mother also suggested a bridge order where the father had sole legal custody and physical care of the child with the option of her visiting once every three months.

*Best interests.* The mother asserts that without her oversight the father would not meet the child's physical and medical needs properly and termination of her rights is not in the best interests of the child. In considering a child's best interests, we give consideration "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Once a ground for termination has been proved, we cannot deprive children of permanency on the hope a parent will learn to be responsible and reliable. *A.B.*, 815 N.W.2d at 777–78.

During the seven months the child lived with the mother, the child was exposed to controlled substances in the home and then severe, life-threatening abuse by either the mother and/or her boyfriend. After the child's traumatic and permanent injuries, the mother spent her time and efforts trying to discredit the father's care to medical personnel, DHS, and the court, and seeking to move the child to her parents' custody rather than work with the father to provide the best possible care for the child.

This child needs safety, stability, and a permanent home. The mother has consistently sought to disrupt the stability and permanency the child can achieve with the father only to place the child in another temporary situation with her parents. The mother's actions prioritize what she wants rather than the child's best interests. We find termination of the mother's parental rights to be in the child's best interests.

*Statutory exceptions.* The mother identifies two statutory exceptions she believes are applicable to preclude termination.

The court need not terminate the relationship between the parent and child if the court finds any of the following:
(a) A relative has legal custody of the child.
. . . .
(c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

Iowa Code § 232.116(3)(a), (c). The father has legal custody of the child, and the mother claims her bond with the child is demonstrated by a "positive reaction" to her voice.

"[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). The exceptions to termination are permissive not mandatory. *Id.* "We may use our discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* (citation omitted). For the first exception, the relative with custody of the child—the father—is actively seeking termination of the mother's parental rights. As to the other exception, the mother has not met her burden to show her bond with the child is so close that termination of the relationship would be detrimental to the child.

We decline to apply the exceptions to termination. Termination of the mother's parental rights is appropriate in this case.

**AFFIRMED.**